### CHAMBLEE v. TRIBBLE, TREASURER.

1. A point not determined in the court below cannot arise or be reviewed in this court.
2. Section 269 of the General Statutes inhibits the courts from issuing a writ of injunction to stay the collection of any tax, whether legal or illegal, and provides for the taxpayer' another efficient remedy.
3. The assessment upon certain townships of Anderson County to pay for their subscriptions to the Savannah Valley Railroad Company, is *a tax*, and as such is within the terms of section 269 of the General Statutes.
4. This section is not in conflict with those sections of the constitution that give to the Supreme Court and to the Courts of Common Pleas power to issue writs of injunction. *State* v. *Treasurer*, 4 *S. C.*, 520, and *State* v. *Gaillard*, 11 *Id.*, 309, recognized and followed.
   MR. JUSTICE McGOWAN *dissenting.*

Before WITHERSPOON, J., Anderson, July, 1883.

This was an action commenced January 30, 1883, by Lawrence C. Chamblee in behalf of himself and other taxpayers of certain townships of Anderson County against Milton P. Tribble, treasurer, and Thos. J. Webb, auditor of said county, to restrain the threatened sale of their property for the non-payment of the taxes or assessments laid upon them to meet the subscriptions made by their townships to the Savannah Valley Railroad Company. By order of court the railroad company was also made a defendant. The complaint alleged that there was no tax; that the assessments were levied under the direction of the railroad

company; that the act of March 12, 1878, authorizing the sub-
scription and assessments was in violation of art. II., § 20, of the
constitution, being defective in its title; also of art. IX., § 8,
the taxes not being for corporate purposes; also of art. I., § 14;
and that the assessments had not been properly entered by the
auditor upon his duplicate.

The answer denied plaintiffs' right to an injunction, and set
forth the regularity of all proceedings under the law leading
down to the distress under tax executions; and the illegality of
the tax was denied.

Upon these pleadings, and the evidence taken by a referee,
the Circuit Judge passed the following decree:

When the case was called for hearing defendants' counsel
denied the jurisdiction of the court, contending that under sec-
tion 269 of the General Statutes, 1882, this court could not
entertain this action, seeking to enjoin a levy under execution for
the collection of taxes. If the assessment, levy, and advertise-
ment of plaintiffs' property is for the purpose of collecting a
tax, it is clear that under section 269 this court is expressly for-
bidden from granting any order, writ, or process of any kind
whatsoever, staying or preventing the collection thereof, whether
such tax is legally due or not.

Plaintiffs' counsel have argued with much force that the assess-
ment and levy by defendants was not for public governmental
purposes, which is necessary to constitute a tax, but must be
regarded as a special assessment for local improvements. The
case of *Hanson* v. *Vernon* (27 *Iowa*, 28); *People* v. *Township
of Salem* (4 *Am. Rep.*, 400, 20 *Mich.*, 452), and other authori-
ties, were cited to establish the distinction between special local
assessments and taxes. Taxes are defined (*Cool. Tax.*, 1) as
being "the enforced proportional contributions of persons and pro-
perty, levied by the authority of the State for the support of the
government, and for all public uses." Taxes are also defined as
"burdens, or charges imposed by the legislative powers of the
State, upon persons or property for public purposes." *Black.
Tax Tit.*, 1.

Whether or not the legislature intended that the payment of
the subscriptions in aid of the Savannah Valley Railroad should

be regarded and enforced as a tax, can best be determined by reference to the provisions of the acts of the general assembly above referred to. In the act of March 12, 1878, § 10, granting the charter to said railroad company (16 *Stat.*, 438), as well as the amendatory act, December 24, 1878, § 10 (16 *Stat.*, 816), it will be observed that the county auditor of Anderson County is required to assess annually upon the property of the townships so subscribing such per centum as may be necessary to pay the instalments of subscriptions, which shall be "known and styled on the tax books as the Savannah Valley Railroad tax," and shall be collected by the treasurer at the same time and under the same regulations as are fixed and provided by law for the collection of taxes in towns, cities, or counties so subscribing.

By joint resolution of the general assembly, approved February 20, 1880 (17 *Stat.*, 314), the president and the board of directors of the Savannah Valley Railroad Company were authorized and empowered to direct the "collection of the taxes" voted to said railroad in Anderson County. Thus at different times by expressions of the legislative will that body has declared and provided for the collection of subscriptions in Anderson County to the Savannah Valley Railroad as a tax, and has directed the same methods for the collection of said subscriptions as provided by law for the collection of State and county taxes.

I am constrained to conclude and decide that the assessment and levy upon plaintiffs' property was made by defendants to collect taxes, as contemplated in section 269, and that the collection of said taxes by sale of plaintiffs' property cannot be enjoined by this court under said section 269 of the General Statutes, 1882.

This court having no jurisdiction in the premises, neither the constitutionality of the acts of the legislature referred to, nor the liability of the conduct of defendants, can be considered or determined in this action.

It is therefore ordered and adjudged, that the temporary injunction heretofore granted herein by his honor, Judge Wallace, be, and the same is hereby, dissolved, and that plaintiffs' complaint be dismissed with costs.

From this decree the plaintiffs appealed upon the following grounds :

I. His honor erred in holding that he had no jurisdiction in the premises under section 269, General Statutes, 1882.

II. His honor erred in holding that the constitutionality of the acts of the legislature referred to in the complaint, to wit, the act chartering the Savannah Valley Railroad and the subsequent acts amendatory thereto, could not be considered or determined in this action.

III. His honor erred in holding that the liability of the conduct of the defendants could not be considered or determined in this action.

IV. His honor erred in holding that the township assessments or subscriptions levied or assessed on plaintiffs' property in aid of the Savannah Valley Railroad were taxes.

V. His honor erred in holding that the assessment and levy upon plaintiffs' property was made by defendants to collect taxes.

VI. His honor erred in holding that the sale of plaintiffs' property could not be enjoined under section 269, General Statutes, 1882.

VII. His honor erred in holding that the plaintiffs sought in this action to enjoin a levy under execution for the collection of taxes.

The appeal was argued January 14, 1884, after which this court passed the following order :

Inasmuch as, in our judgment, the question of the constitutionality of section 269 of the General Statutes of 1882 is necessarily involved, though not formally made, in this appeal, and inasmuch as such question has heretofore been decided by a divided court, we think it desirable that a question of such importance should be maturely considered before it is reaffirmed. It is therefore ordered that the question whether the above mentioned section is in conflict with the provisions of the constitution, be set down for argument at the next term of this court during the call of cases from the Eighth Circuit.

The re-argument was had November 25, 1884, upon the point directed.

*Messrs. W. Ċ. Benet* and *H. G. Scudday*, for appellants.

*Messrs. B. F. Whitner* and *Frank C. Whitner*, contra.

April 25, 1885.    The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.    Certain townships in the County of Anderson, under an "act to charter the Savannah Valley Railroad Company," passed March 12, 1878 (16 *Stat.* 435), and other acts amendatory thereto approved December 24, 1878 (16 *Stat.*, 816), and December 24, 1880 (17 *Stat.*, 418), voted a subscription to said road.    The appellant, Chamblee, and twenty-six other land owners and taxpayers in these townships, refused to pay their portion of this subscription.    They were published as "delinquent taxpayers" and their lands were advertised to be sold by the auditor and treasurer, with a penalty of fifteen per cent.

The appellants applied to his honor, Judge Wallace, for an injunction, which was granted temporarily until the case could be heard on its merits.    The case was afterwards heard by his honor, Judge Witherspoon, who decreed adversely to the appellants, on the ground that, the assessment and levy made upon appellants' property being made to collect taxes, he had no jurisdiction under section 269, General Statutes, 1882, and having no jurisdiction "neither the constitutionality of the acts of the legislature referred to above, nor the liability of the conduct of the defendants, could be considered or determined by him."    He, therefore, ordered and adjudged that the temporary injunction be dissolved and the complaint be dismissed.    Hence the appeal.

Three questions have been discussed in the appeal.    *First.* The appellants deny the constitutionality of the act of March 12, 1878, and the acts amendatory thereto, chartering the Savannah Valley Railroad Company, under which the subscription was made, alleging that it is in violation of art. II., § 20, of the constitution of this State, "in that its title is defective."    *Second.* They deny that the assessment and levy made by the defendants were for the purpose of collecting a tax in the sense of section 269, General Statutes, 1882; and *Third*, they deny the constitutionality of said section 269, which forbids the courts and judges of this State from granting any order or process of any kind staying the collection of taxes, whether said tax is legally

due or not, and under which the Circuit Judge determined that it was his duty to dismiss the complaint.

Inasmuch as the Circuit Judge made no ruling upon the first question, *i. e.* the constitutionality of the act chartering the company, we do not regard that question as before us,.as we can only review such questions of law as may be adjudged and determined below.   In the absence of any ruling by the Circuit Judge, no question can arise in this court.   We have not, therefore, considered this first question, it being put aside as not necessarily arising in the appeal.

Second.  Was it error in the Circuit Judge to hold that the assessment and levy upon appellants' property was for the collection of taxes, and on that account subject to the provisions of section 269, General Statutes, 1882, which, as we have seen, inhibits injunction and all other process issuing from the courts, intended to stay such collections?   This is a grave question and one not free from doubt, but in our opinion the Circuit Judge was correct in his ruling.   It is admitted in the argument of appellants' counsel, that "if the assessment, levy, and advertisement of appellants' property is for the purpose of collecting a tax, it is clear that under section 269 the Circuit Court is expressly forbidden to grant any order, writ, or process of any kind whatsoever, staying or preventing the collection thereof, whether such tax is legally due or not."   It is also said in the argument that the provisions of this section are wise, sustained by good authority, and grounded in good sense.   Because it is better that the taxpayer, if he conceives the taxes to be unjust or illegal for any cause, should pay them notwithstanding, under protest, and then bring an action against the county treasurer for the recovery thereof, as the act allows.

But it is urged that this is no tax, and consequently that section 269 does not apply, and many authorities are referred to as defining and determining what constitutes a tax; and the conclusion reached is, that a tax can only be legally raised for a public purpose, for the proper needs of government, and for a public use; and it is urged that this assessment not being for a public use, it is not a tax in the sense of section 269, *supra*.   There can be no question as to the soundness of this principle; and it is con-

ceded that should the general assembly at any time attempt to levy a tax for any purpose except a public one, the act would not only be unconstitutional, but would. be transcending the powers of the general assembly in a direction the most dangerous and fatal. The mistake, however, in appellants' argument, as it seems to us, is not in the principle itself, but in its application. The argument assumes that if the tax be an illegal tax, that section 269 does not apply, and therefore the case is discussed as if the question before the court was, is this a legal or illegal tax? If that was really the question before us, the authorities cited and the argument based thereon would be pertinent, but this is not the question; on the contrary, the real question is, were the defendants below attempting to collect a tax legal or illegal when the injunction was applied for? If so, section 269 stayed the hands of the court at once and in express terms.

It should be remembered in this connection that the object of this section was not to deprive the taxpayer of all remedy in the event that the tax levied should prove to be illegal, nor to enforce the payment of an illegal tax, without remedy, as well as a legal one, but its purpose was simply to postpone the question of illegality to a subsequent proceeding, thereby relieving the tax gatherer from responsibility and preventing delay. It thus assumed, in the first instance, the legality of all taxes imposed by an act and forbade the courts from inquiring into that question, upon proceeding by injunction to stay their collection. The act may seem harsh and imperious, and in some instances may be oppressive, but is it not vindicated by the necessities of government, and the importance of public interests, which concern all, and which rise higher than mere personal and private affairs? Be this as it may, however, the meaning of the act cannot be misunderstood. It inhibits the courts in no doubtful language from stopping the collection of taxes, whether legal or illegal, and therefore whereever and whenever a tax is being collected, it is present to shield the tax gatherer.

What then is a tax? is the question. Can there be no tax but a legal one? A tax, in general terms, may be defined to be a pecuniary burden assessed upon the citizen, to be levied upon his property and collected under laws enacted for that purpose. It

may be legal or illegal, dependent upon the purpose of the collection, *i. e.* whether for a public or private use, but in either case is it not a tax imposed and collectible until, if illegal, the illegality is adjudged and determined by proper authority? Section 269 assumes primarily that all assessments imposed by the authority of an act are taxes, and it prevents any interference in their collection in the first instance, reserving the right of the taxpayer to have the amount paid refunded in the event that the tax is subsequently held illegal.

The question, then, below and now here is, was the burden from which the appellants seek relief imposed upon them as a tax? The answer to this question is plain and free from doubt. In the act of March 12, 1878, chartering the railroad company, and the amendments thereto, it is styled a tax—a railroad tax. The county auditor is authorized and required to assess it annually on the property of citizens as a tax. It is required to be entered in the tax books as a tax. By the joint resolution of February 20, 1880, the president and directors of the road are empowered to direct its collection as a tax; and, finally, the general State tax machinery is made use of in its collection, with all the incidents and appliances employed in the collection of all other taxes, State and county. Under these circumstances, and in the face of section 269, assuming it to be constitutional, the Circuit Judge was not required to enter into the investigation of the question, whether this imposed tax was for a public or private purpose, and therefore whether legal or illegal.

This brings us to the third question. Is section 269 constitutional? It is urged that it is not, because it is in violation of sections 4 and 15 of article IV. of the State constitution. Now, it is conceded that these sections do give to the Supreme and Circuit Courts of the State respectively full power to issue writs of injunction, and the other writs therein mentioned. It is also conceded that the constitution is higher than any act of the general assembly, and therefore when they conflict the act must give way. But the question here is, does the act under consideration conflict with either of these sections when properly understood? Has the legislature attempted by this act to curtail or limit the constitutional power of the courts in this respect? This must

depend upon the purpose which the framers of the constitution had in view when they thus conferred the power upon the courts to issue these writs. Was it their purpose simply to perpetuate these writs, and to fix them as unalterable remedies in certain cases for all times ? Were these writs of such importance as to demand this, and was there a fear that the citizen might be deprived of this mode of relief, if the hands of the legislature were not tied? Or was it done simply to confer jurisdiction on the courts in cases where the law, as it stood, when an application might be made for relief, authorized them to be issued ? If the former purpose had been in view, how much easier and freer from doubt could such an idea have been expressed by simply declaring that said writs as heretofore existing should be held inviolate, and that the judges and courts should not only have power to issue them, but should never be prevented from the exercise of that power. If, however, the latter was the intent, no other language more appropriate to that end than that used could have been used.

Section 4 says, the Supreme Court   *   *   *   shall always have power to issue writs of injunction, *mandamus*, &c. Section 15 provides that the Court of Common Pleas   *   *   * shall have power to issue writs of *mandamus*, prohibition, &c. Not that these writs shall remain inviolate, as is said of the right of trial by jury—not that they shall never be suspended except in certain contingencies as is provided in reference to *habeas corpus*—but simply that the courts should have the power to issue them when, of course, it is proper and legal that they should be issued. The framers of the constitution knew full well how to perpetuate and fix a right beyond the reach of all attack, either from the legislature or any other power, when they so desired, as is shown by the provisions above referred to in reference to the right of trial by jury and the writ of *habeas corpus*, and also by many other provisions found in the bill of rights securing rights to the people.

Besides, what reason could there have been why these special writs should have been placed under the guardianship and protection of the constitution more than any other modes of relief? They were certainly not more important, more effective, nor in

any greater danger of being usurped, lost, or destroyed, than other remedies, and there was no special reason why they should have been declared perpetual and irrevocable. On the other hand, there might have been a question whether the conferring of general jurisdiction on the courts in civil and criminal cases, without more, would have embraced these writs, because of their special and limited character, and on this account there was a reason why it was proper to mention them specially, and to confer jurisdiction in terms in reference to them on the courts. When we find, therefore, a sufficient reason for their prominence in the constitution in the fact of jurisdiction conferred, would it not be a strained construction to conclude that underlying this was a purpose to limit the legislative powers of the general assembly as to these writs in the exercise of that discretion which it is admitted that body possesses in general legislation, and which is so necessary not only in such legislation, but especially so in shaping and moulding remedies and proceedings, to be administered by the courts for the proper protection of the citizen in his various rights ?

Independent of all this, however, we have two cases decided by our own court, which, while they remain of force, are direct and conclusive on the question. *State* v. *Treasurer*, 4 *S. C.*, 520, and *State* v. *Gaillard*, 11 *Id.*, 309. It is true, the first case was decided by a divided court, Chief Justice Moses dissenting, and in the second Mr. Justice McIver concurred only because he felt himself bound by the first as authority, at the same time declaring that if the question was *res integra*, he could not concur. The dissenting views of two such eminent jurists, when the question has come up again, are well calculated to make us pause to review the ground upon which these cases stand, but in such review we must remember how important is the doctrine of *stare decisis* in the administration of justice, and how ruinous also is uncertainty and vacillation. And unless in such review the error is apparent, manifest, and dangerous in its tendencies, it is better to yield than to overrule.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McIVER. I concur, because the constitutionality of the provisions contained in section 269 of the General Statutes has been determined by authority to which I am bound to yield.

MR. JUSTICE McGOWAN, *dissenting.* As I cannot concur in this judgment, its importance makes it proper that I should state briefly the reasons for that dissent.

The lands of a number of the citizens of Anderson County, residing in the townships of Varennes, Hall, Dark Corner, and Centreville, of that county, were levied and advertised for sale under some process in the nature of a tax execution issued by the treasurer of the county, to enforce the collection of certain assessments upon a subscription voted by a majority of the electors of the said townships respectively, to aid in the construction of the Savannah Valley Railroad. The plaintiff in this action, being one of those whose lands were advertised, instituted this action in behalf of himself and a number of others in the same condition against the treasurer and auditor of the county and "The Savannah Valley Railroad Company" to restrain and enjoin the sale of their lands under the process aforesaid, alleging that they never authorized the said subscriptions; that there was no law, or tax levied pursuant to law, to authorize the said levy and sale; that the charter of the company and the whole proceedings were irregular and void, and the acts under which they were instituted unconstitutional. The defendants answered substantially that all the proceedings were regular and authorized, but insisted that the court could not, under any circumstances, grant the relief prayed for, but was prohibited from doing so by the act of December 24, 1878, entitled "an act to facilitate the collection of taxes," reënacted as sections 268 and 269 of the General Statutes.

The case was heard by Judge Witherspoon, who dismissed the complaint, saying : "I am constrained to conclude and decide that the assessment and levy upon plaintiffs' property was made by defendants to collect taxes as contemplated in section 269 of the General Statutes, and that the collection of said taxes by levy and sale of plaintiffs' property cannot be enjoined by this court under said section. This court having no jurisdiction in the premises, neither the constitutionality of the acts of the leg-

islature referred to, nor the liability of the conduct of defendants, can be considered or determined in this action," &c.

From this judgment the plaintiffs appealed on various grounds, but for our present purpose it will not be necessary to set out any but the following:

"Because his honor erred in holding that the township assessments or subscriptions levied or assessed on plaintiffs' property in aid of the Savannah Valley Railroad were taxes.

"Because his honor erred in holding that the assessment and levy upon plaintiffs' property were made by defendants to collect taxes.

"Because his honor erred in holding that the sale of plaintiffs' property could not be enjoined under section 269 of the General Statutes."

It is obvious that the merits of the case were never reached. Whether or not there were good grounds for the relief prayed for by the plaintiffs, we do not know, for that inquiry was cut off upon the view that the property was advertised for sale under an execution for the collection of taxes, and the enforcement of such an execution, no matter whether irregular, illegal, or unauthorized, could not be enjoined by the court under section 269 of the General Statutes, which, among other things, provides as follows: "There shall be no other remedy in any case of the illegal and unlawful collection of taxes or attempt to collect taxes * * other than that herein provided. * * * And no writ or process of any kind whatever, staying or preventing any officer of the State charged with a duty in the collection of any tax, whether such tax is legal or not, shall in any case be granted by any court or the judge of any court; but in all cases whatever the person against whom any tax shall stand charged upon the books of the county treasurer, shall be required to pay * * and thereupon shall have his remedy under the provisions of the next preceding section," &c. (which will be adverted to hereafter).

As this provision of the statutes apparently lay in the way of the plaintiffs, before the merits of their case could be considered, and the Circuit Judge had placed entirely upon it his decree dismissing the complaint, after the first argument this court ordered the question of the constitutionality of the aforesaid provision to

be reargued, saying in the order: "Inasmuch as, in our judgment, the question of the constitutionality of section 269 of the General Statutes (1882) is necessarily involved, though not formally made in this appeal: and inasmuch as such question has heretofore been decided by a divided court, we think it desirable that a question of such importance should be maturely considered before it is re-affirmed," &c. The question was accordingly reargued at the bar. But it seems that my brethren, notwithstanding its admitted importance and the fact that it was originally decided by a "divided court," have come to the conclusion that it is better to stand on the principle of *stare decisis* and reaffirm the former decision, holding that the provision of the law prohibiting the judges from granting injunctions in certain cases, is constitutional, and applies to this case. In that I cannot concur. I thoroughly agree that consistency and stability in the administration of the law is becoming and proper, as tending to promote the peace and good order and prosperity of the State; but it seems to me that it is possible to go to the opposite extreme, and by mere acquiescence to permit the erroneous decision of to-day to ripen into the precedent of to-morrow, and thus allow error to assume the form and force of law, and every instance of such acquiescence only adds to the force of that error.

Section 15, article IV., of the constitution declares that "the Courts of Common Pleas shall have power to issue writs of *mandamus*, prohibition, *scire facias*, and all other writs (including injunction) which may be necessary for carrying their powers fully into effect." And yet it is maintained that this positive declaration of the constitution may be absolutely nullified by an act of the legislature which provides that "no writ, order, or process of any kind whatever, staying and preventing any officer of the State, charged with a duty in the collection of taxes from taking any step or proceeding in the collection of any tax, whether such tax is legally due or not, shall in any case be granted by any court or the judge of any court," &c. It seems that the view, sustaining this act in prohibiting judges from granting writs of injunction, sometimes called "the great preventative remedy of equity," is, that the legislature has the right to determine in what cases the jurisdictional power conferred by

this section shall be exercised, especially where an adequate alternative remedy is given in the place of that taken away. I had thought that was the very matter which the judges were appointed to determine, there being no good reason why, even as to the collection of taxes, they should not be safely entrusted with the power expressly given to them by the constitution. As was said by this court in *Herndon* v. *Moore*, 18 *S. C.*, 351: "The constitution has divided the functions of government into the legislative, executive, and judicial, and it is the fundamental theory of our system that the departments shall be kept separate and each in its own sphere, independent of the others." The question whether a proper case has been made for an injunction, is peculiarly judicial in its character, and all judicial power has been taken away from the legislature and deposited in the courts of the State created or to be created.

It is true that there are two cases in our books which have been cited as sustaining the constitutionality of the law. But although there are nominally two cases, there is in fact but one, that of *State* v. *Treasurer* (4 *S. C.*, 529); for the other, *State* v. *Gaillard* (11 *S. C.*, 309), was avowedly and entirely placed on the authority of the first. "When cases follow in line for no better reason than because they have a case to follow, the authority is to be found in the first decision and not by counting up the number in the line." I must say that I cannot consider the law settled as announced in the case of *State* v. *Treasurer*, *supra*. It seems to me that the decision is not only unsupported by authority, but is of dangerous tendency. It was made in 1871, a time not favorable for intelligent, dispassionate judicial inquiry. As before stated, it was made by a divided court, Mr. Justice Willard delivering the judgment with the concurrence of Judge Wright, and Chief Justice Moses dissenting. It would now, however, accomplish no good purpose to again open the argument, which is well stated in the dissenting opinion of Chief Justice Moses in the case of *The Treasurer* as also in that of Mr. Justice McIver in the case of *State* v. *Gaillard*, *supra*. I hope the case will be formally overruled.

But assuming that the prohibition upon the action of the courts, in regard to restraining the collection of State and county

taxes proper, must be regarded as constitutional for the reason that it has been so decided, does it follow that it is constitutional and applicable to the collection of local township subscriptions to railroads, whether called subscriptions, assessments, or taxes? It is quite certain that neither of the cases referred to as affirming the constitutionality of the law, arose in connection with such a case; and upon that precise question we are in no way embarrassed by the principle of *stare decisis*. But on the contrary, as to such a case the question is still *res integra*, and we are not bound to enforce the act beyond the exact point decided, or to stretch it by construction so as to embrace cases of this kind, unless it necessarily follows from the nature of the thing or from the terms of the act itself.

It strikes me that cases of this kind are not within the purview of the sections which restrain the judges in the matter of collecting ordinary taxes, and to so construe them will be in effect to amend the law, and in doing so to extend it and go beyond the reasons upon which it was based and contrary both to its spirit and intent and the express terms of several of its provisions. It is perfectly manifest that the act was not passed with any special reference to the collection of railroad assessments, considered as taxes, for the first act upon the subject, that which was considered in the case of *State* v. *Treasurer*, was passed as far back as 1870, when there was not in the State, nor ever had been, and it could not be foreseen that there ever would be, such an anomalous thing as a township subscription for a railroad voted by a majority of the electors. The same may be said of the act of 1878, to facilitate the collection of taxes (16 *Stat.*, 785). It is very well known that the object of that act was to prevent the payment of taxes in depreciated funds or money, such as the bills of the old bank of the State, or any other except those which the treasurer was by law authorized to receive, and without the remotest reference to closing the mouths of the judges in the matter of collecting railroad assessments in the form of taxes. So that it is perfectly plain, that if the law restrained the judges from interfering with the collection of such assessments, it must be from the terms of the act itself being broad enough necessarily to cover such a case.

Are the terms of the sections aforesaid so broad and explicit

as to require us to construe the prohibition upon the courts, as extending to local railroad assessments, under the form and name of taxes? I do not think so. Section 268 of the General Statutes, which undertakes to provide what is called the "alternative remedy" for that of injunction taken away, is as follows: "In all cases in which any county, State, or other taxes are now, or shall be hereafter charged upon the books of any county treasurer of the State against any person, and such treasurer shall claim the payment of the taxes so charged, or shall take any step or proceeding to collect the same, the person against whom such taxes are charged, or against whom such step or proceeding shall be taken, shall, if he conceives the same to be unjust or illegal for any cause, pay the said taxes, notwithstanding under protest, in such funds and moneys as the said county treasurer shall be authorized to receive by the act levying the same; *and upon such payment being made, the said county treasurer shall pay the taxes so collected into the State treasury, giving notice at the time to the comptroller general that the payment was made under protest; and the person so paying said taxes may at any time within thirty days after making such payment, but not afterwards, bring an action against the said county treasurer for the recovery thereof in the Court of Common Pleas for the county in which such taxes are payable; and if it be determined in said action that such taxes were wrongfully or illegally collected for any reason going to the merits, then the court before whom the case is tried shall certify of record that the same was wrongfully collected and ought to be refunded, and thereupon the comptroller general shall issue his warrant for the refunding of the taxes so paid, which shall be paid in preference to all other claims against the treasury,*" &c.

Can any one read this section and affirm with certainty that the remedy therein provided was intended to extend, and by fair construction does extend, to anything other than what are strictly State or county taxes, levied for the benefit of the government and payable into the State treasury? These assessments were not made directly by the legislature for the benefit of the State or county government, but by the president and directors of the Savannah Valley Railroad Company, who had by the joint reso-

lution of 1880 authority to "direct the collection of the taxes voted to the said Savannah Valley Railroad." They were not upon the regular "books of the county treasurer," in the sense of the act, but on a special book provided for the purpose, and were not payable "into the State treasury," giving notice at the time to the comptroller general that the payment was made under protest, but it is expressly directed by the amended charter that the said assessments "shall be paid by such treasurer to said railroad company."

It seems to me that this direction of the proceeds of the assessments, at once repealed, *quoad* these plaintiffs, all the latter part of the section quoted, which is italicized, and that they could not pay under protest and avail themselves of the alternative remedy therein provided, to pay and recover back from the State, if the tax should turn out to be illegal. I do not see that in such case where the money has been paid to the company the comptroller general could "issue his warrant for the refunding of the taxes so paid," &c. If not, then there cannot be said to be an adequate alternative remedy for these plaintiffs, and that being (as stated by Judge Haskell in *State* v. *Gaillard*) the only thing which makes the law constitutional, it would seem to follow that no practical adequate remedy being provided of which these plaintiffs may avail themselves, the act excluding the judges from inquiry, cannot extend to them, or, if so, that it is clearly unconstitutional. The act which stands only because it affords an alternative remedy, surely cannot stand in the way of these to whom it gives no such remedy. If the parties cannot in any event recover back the money *from the State*, then they have no adequate alternative remedy, and if the judges are excluded from even hearing their alleged grievances, they would be left absolutely remediless and at the mercy of a company having the assistance of the officers and the use of all the machinery of the State.

But it is said that these assessments are taxes, and the prohibition is general, forbidding inquiry into the legality of any kind of a tax. It is true, that in the acts and joint resolutions of the legislature these exactions are sometimes called "subscriptions," sometimes "assessments," and sometimes "the Savannah Valley Railroad tax," but it is quite certain that they are not State

taxes in the usual and ordinary sense of the word. To be taxes in the sense of the act, they must have the characteristics of taxes, and if not they cannot be made such by simply calling them by that name. I have always had the idea, expressed by Webster in one of his definitions, that "a tax is a rate or sum of money assessed on the person or property of the citizen for the use of the nation or State," and doubtless that was the sense in which the framers of this law understood it. But I do not think it necessary here to enter into the discussion. Whether these exactions voted by a majority of the electors in the townships named for the benefit of the railroad company, are called "subscriptions," or "assessments," or "railroad taxes," is a matter outside of the question. In either case it seems to me clear that they are not "taxes" in the sense of the sections under consideration, which require the taxes there in contemplation to be paid "into the treasury of the State," and in reference to which the comptroller general, in a certain event, was required "to issue his warrant refunding the same."

Sections 268 and 269 are manifestly but parts of the same scheme: the first undertaking to provide an alternative remedy by the State refunding, if the tax should turn out to be illegal; and the second forbidding all "other remedy." And the point is, that when the circumstances are such that the "other remedy" is not given by the first, it follows that the second, taking away that by injunction, does not apply. And in this case the exactions, whether they are called "taxes" or not, are ordered to be paid over to the railroad company in such way as to take them out of section 268, making the State liable to refund them, and in doing so deprives the parties of any adequate alternative remedy. If I am right in this, and it seems to me that there cannot be two opinions, then this decision certainly makes a great advance beyond what was decided in the cases of *The Treasurer* and of *Gaillard*, for in both of them the taxes being public State taxes, there was clearly the right to make the State refund, and for that very reason it was held that the act only "postponed" the question of illegality, leaving that to be determined in the "other remedy." A Tennessee act of 1844 declares a deed made in pursuance of a public "sale for taxes" *prima facie* evidence of

the prerequisites of the law. A party claimed under a town corporation tax sale, and the Supreme Court of that State held that the corporation tax sale was not within the law. Judge Turley says: "Corporation taxes are not public, but private taxes, and are therefore not embraced within the act, but as to the remedy for collection are left as it existed prior to the passage of the act." *Shoalwater* v. *Armstrong*, 9 *Humph.*, 217; *Black. Tax Tit.*, 84.

If it should be the decision of this court that section 269 must apply to this case simply because these exactions for a railroad are called "taxes," without inquiring whether the parties are entitled to the alternative remedy against the State, it will indeed be a speedy realization of the fears of Chief Justice Moses expressed in his dissenting opinion in the case of *The Treasurer:* "This concedes an unlimited control to the legislature of the whole judicial magistracy of the State, which, in the end, might be so exercised as to suppress its entire authority. If it can declare in what case a particular form of action shall be a remedy for an alleged complaint, and ignore its application to other cases, in which, at the adoption of the constitution, it was employed as a medium through which a wrong was to be redressed, may it not step by step disarm the courts of all their authority, and at last leave it but a tribunal to carry out the behests and mandates of the legislative will? The power to tax is the most extensive and unlimited of all the powers which a legislative body can exert. It is without restraint, except by constitutional limitations. To tie up the hand that can alone resist its unlawful encroachments, would not only render uncertain the tenure by which the citizen holds his property, but make it tributary to the unrestrained demands of the legislature," &c.

I think this court should now declare section 269 of the General Statutes to be unconstitutional; or if it is too late to do so, that it should declare that said section was never intended to apply to a case like this, where the provision for an alternative remedy against the State does not exist; and that the decree should be set aside and the cause remanded to the Circuit, to be heard like other cases, only upon the merits involved.

Judgment affirmed.